IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| THE MIDWESTERN INDEMNITY CO., ) ) Plaintiff, ) ) vs. ) ) MALISSA BROOKS and ) BRADLEY BROOKS, ) ) Defendants. ) | Case No. 13-0304-CV-W-ODS |

## ORDER AND OPINION (1) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND (2) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pending are cross motions for summary judgment. The Court hereby denies Defendants' motion (Doc. # 33) and grants Plaintiff's motion (Doc. # 29).

## I. BACKGROUND

The facts are undisputed. In September 2011, Plaintiff Malissa Brooks was riding a bicycle on Missouri Highway 18 when she was struck by a car driven by Clyde Lawrence. Malissa (or Malissa and her husband) filed suit against Lawrence in state court; that suit was settled for the limits of his policy, or $50,000. This case involves the Brooks' claim against their own insurance company, which seeks recovery under the underinsured motorist ("UIM") provisions. That provision provides for $100,000 of coverage. Defendants own five vehicles insured by Plaintiff, and they contend they are entitled to $500,000 of coverage; Plaintiff contends the underinsured motorist provisions do not stack and the maximum coverage is $100,000. Plaintiff has paid $100,000, the amount it alleges to be the policy limit; the parties agree Defendants' damages exceed that amount.

Defendants' argument relies heavily on the Declarations Page, which summarizes the amounts and types of coverage and the premiums charged, but which

does not contain any actual language specifying the terms or conditions of the coverage provided.  Exhibit 1 to Complaint at 9-10.  The Declarations Page indicates UIM protection applies for each of Defendant's cars.  It further indicates the limit for UIM coverage is $100,000 per person and $300,000 per accident.

Plaintiff's argument relies heavily on the policy's language, including particularly the following provisions:

**Limit of Liability**

**A.** The Limit Of Liability shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident.  Subject to this limit for each person, the Limit Of Liability show in the Schedule or in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

This is the most we will pay regardless of the number of:

1. "Insureds"';
2. Claims made;
3. Vehicles or premiums show in the Schedule or in the Declarations; or
4. Vehicles involved in the accident

\* \* \*

**Other Insurance**

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided by this endorsement:

1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

\* \* \*

Finally, Part F contains "General Provisions," one of which states that

> If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

## II.  DISCUSSION

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986).  "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Wierman v. Casey's Gen. Stores, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985).  However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

"Stacking" refers to an insured's ability to obtain multiple insurance coverage benefits for a single injury.  The issue of stacking arises primarily in two circumstances: (1) when there are multiple insurers involved, such as when the insured has two vehicles each insured by a different insurer, or (2) when there are multiple coverages in a single policy, such as when an insured has multiple vehicles covered by a single policy.  Daughhetee v. State Farm Mut. Auto. Ins. Co., No. 13-1185, slip op. at 5 (Mar. 18, 2014) (citing Niswonger v. Farm Bureau Town & Country Ins. Co. of Mo., 992 S.W.2d 308, 313 (Mo. Ct. App. 1999)).

This is a case of the second sort: Defendants argue they are entitled to stack coverages because they have multiple cars insured by Plaintiff. The issue is one of contract interpretation. As is true for all contracts, interpretation of an insurance contract is a matter of law. Seeck v. Geico General Ins. Co., 212 S.W.3d 129, 123 (Mo. 2007) (en banc). Ambiguities are to be construed in favor of the insured. Id. "An ambiguity exists when there is duplicity, indistinctness or uncertainty in the meaning of the policy [and] is reasonably open to different constructions." Gulf Ins. Co. v. Noble Broadcast, 936 S.W.3d 810, 814 (Mo. 1997) (en banc). The presence of a broad provision for coverage coupled with subsequent narrowing language does not create an ambiguity. Todd v. Missouri United School Ins. Council, 223 S.W.3d 156, 162-63 (Mo. 2007) (en banc). Moreover, unlike the case with *uninsured* motorist coverage, Missouri law permits anti-stacking provisions with respect to *underinsured* motorist coverage. E.g., Jordan v. Safeco Ins. Co. of Ill., 741 F.3d 882, 884 (8th Cir. 2014); Ritchie v. Allied Property & Cas. Ins. Co., 307 S.W.3d 132, 135 (Mo. 2009) (en banc).

The Limit of Liability provision is quite clear. It states that the per-person and per-accident limits identified in the Declarations constitute the "maximum limit of liability." This is the maximum "regardless of the number of . . . [v]ehicles or premiums shown in the . . . Declarations." In fact, Defendants do not suggest these provisions are unclear. See Defendants' Memorandum of Law (Doc. # 34) at 6. Instead, Defendants contend the clear language is trumped by the Declarations Page: their reasoning is that the Declarations Page reflects they purchased five separate policies and the Limit of Liability presupposes only one policy was purchased. Defendants reason that if Plaintiff's argument is correct, then they did not need to pay for UIM coverage on four of their five cars because, without stacking, the amount of UIM coverage would be the same – rendering the second through fifth premiums illusory.[1] Defendants' argument suffers from three fatal flaws. First, it is the policy itself that specifies the terms of coverage – not the Declarations page. Second, and relatedly, the admittedly unambiguous policy specifically addresses this situation: regardless of the number of vehicles or premiums reflected on the Declarations Page, Plaintiff's

---

[1]It may be that Defendants and a class of others similarly situated have a claim for unjust enrichment, but that issue is beyond this case's parameters.

maximum liability is $100,000 per person and $300,000 per accident. This language is sufficient to disallow stacking. Finally, even if Defendants' characterization is correct and they effectively purchased five separate policies (a fact that is neither established nor compelled by anything in the Record), the General Provision specifies that regardless of how many policies Defendants purchased from Plaintiff, Plaintiff's liability would not exceed the highest single limit. Defendants' arguments effectively invite the Court to create an ambiguity that does not exist in order to overcome the policy's clear language, but this is not permitted. Daughhetee, slip op. at 7. The Court is obligated to give each provision a reasonable meaning, and this can be done – and when the unambiguous policy is read as a whole it plainly prohibits stacking.

Defendants contend that Plaintiff was required to explicitly indicate on the Declarations Page that stacking was not allowed *and* that to make that restriction effective Plaintiff was required to charge for UIM coverage on only one car. For support, they rely on Fanning v. Progressive NW Ins. Co., 412 S.W.3d 360 (Mo. Ct. App. 2013). The Court disagrees with Defendant's analysis of this case. First, unlike the case at bar the Missouri Court of Appeals found certain provisions to be ambiguous -- including the definitions of "underinsured motor vehicle." This characteristic immediately distinguishes both the policies at issue and the appropriate analysis for the two cases. Second, the case involved language requiring set-offs from the underinsured motorist – provisions not involved in this case. Fanning did not hold that anti-stacking provisions must be included in the Declarations Page.

Defendants also attach much significance to the characterization of UIM coverage as "floating." All this means is that the coverage is personal and follows the insured, regardless of whether the insured is in a vehicle. The fact that the coverage is floating does not mean anything regarding stackability. Defendants also utilize this characterization to defeat the General Provision from Part F, contending that it is relates only to "coverages that are connected to autos." This argument ignores the provision's language, the terms of which make it apply to all coverages applying to the same accident.

This case is similar in many respects to Corrigan v. Progressive Insurance Co., 411 S.W.3d 306 (Mo. Ct. App. 2013). There, the insured had a motorcycle insurance

5

policy that insured two motorcycles, and the insured paid separate premiums for each motorcycle. 411 S.W.3d at 309. The policy declared that the coverage did not stack, regardless of the number of claims made, the number of motorcycles covered, or the number persons injured. Id. at 312. The Missouri Court of Appeals held the anti-stacking provisions were not ambiguous and would be enforced. The Court sees little to distinguish the two cases. The only difference of note is that the Declarations Page in Corrigan explicitly stated the coverage did not stack, but Corrigan does not depend on this fact.

### III.  CONCLUSION

The policy is unambiguous, and its unambiguous terms prohibit stacking of UIM coverage. Plaintiff's motion for summary judgment is granted and Defendants' Motion for Summary Judgment is denied.

IT IS SO ORDERED.

DATE: March 31, 2014

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT

6